❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information about the location of the cellular<br>device assigned call number 414-424-0451, as<br>further described in Attachment A | )<br>)<br>)<br>)<br>)<br>) | Case No. **25-986M(NJ)**<br>Matter No. 2023R00109 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before      9/5/2025                    *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to                    Hon. Nancy Joseph                    .
                                    *(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of          07/22/2026          .

Date and time issued:    8/22/2025 @ 10:07 a.m. _____          *Nancy Joseph*
                                                    *Judge's signature*

City and state:    Milwaukee, WI _____          Honorable Nancy Joseph, U.S. Magistrate Judge
                                                    *Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2023R109**

1.     Records and information associated with the cellular device assigned telephone number **414-424-0451** (referred to herein and in Attachment B as **"Target Cell Phone"**, that is in the custody or control of Dish Wireless LLC ("Service Provider") a wireless telephone service provider headquartered at 9601 Meridian Blvd, Englewood, CO 80112.  Case agents are also aware that Dish Wireless services also attached to AT&T, headquartered at 1025 Lenox Park Blvd., Atlanta, GA 30319 and/or any other cell phone servicing company currently servicing Dish Wireless at times.

2.     The **Target Cell Phone**.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2023R109**

I.      **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the time period from January 1,2025, to present:

   i.   Names (including subscriber names, user names, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cell Phone** or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the **Target Cell Phone** for a period of **30 days**, during all times of day and night. "Information about the location of the **Target Cell Phone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government

3

shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Rico SMITH (DOB XX/XX/1990) and other unidentified subject(s) since February 2023.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this warrant.

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information about the location of the cellular device<br>assigned call number 414-424-0451, as further<br>described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No.  25-986M(NJ)

Matter No. 2023R00109

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1); 846;<br>and 843(b) | Possession with the intent to distribute controlled substances; Conspiracy to<br>possess with the intent to distribute controlled substances; Illegal use of a<br>communication facility to facilitate a drug-trafficking offense. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:*  07/22/2026  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

TYLER OWENBY  Digitally signed by TYLER OWENBY
Date: 2025.08.21 08:34:42 -05'00'

*Applicant's signature*

Tyler Owenby, DEA SA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:  8/22/2025

*Judge's signature*

City and state:  Milwaukee, WI                Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT
### Matter No. 2023R109

I, Tyler Owenby, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **414-424-0451** ("**Target Cell Phone**"). The **Target Cell Phone** whose service provider is Dish Wireless LLC ("Service Provider") a wireless telephone service provider headquartered at 9601 Meridian Blvd, Englewood, CO 80112, with services also attached to AT&T, headquartered at 1025 Lenox Park Blvd., Atlanta, GA 30319 or any other cell phone servicing company currently servicing **Target Cell Phone** number during the requested period.  The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application(s) by the United States of America for an order(s) pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen

registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the **Target Cell Phone**.

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have been so employed since July 2021 and am currently assigned to the DEA Milwaukee District Office. As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved in electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

2. Prior to my employment with the DEA, I spent the previous five years working as an Analyst assigned to the Columbia Missouri Police Department's Vice Narcotics and Organized Crime Unit. As part of my duties as an Analyst, I was formally trained and certified in the areas of mobile phone forensics, cell tower and phone toll analysis, and advanced open-source intelligence gathering techniques.

3. I have participated in complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. More specifically, my training and experience includes the following:

2

a.  I have utilized informants to investigate drug trafficking.  Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.  I have experience conducting street surveillance of individuals engaged in drug trafficking.  I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

c.  I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine.  I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale.  I know the street values of different quantities of the various controlled substances;

d.  I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations.  I am familiar with the language utilized over the telephone or other communication applications to discuss drug trafficking, and know that the language is often limited, guarded, and coded. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identity;

e.  I know that drug traffickers commonly have in their possession, and at their residences and other locations ("stash houses") where they exercise dominion and control, controlled substances, firearms, ammunition, drug proceeds, and records or receipts pertaining their drug trafficking;

f.  I know that drug traffickers used what is refer to as a "stash house" to stow illegal items such as illegal controlled substance, packaging paraphernalia, illegal firearms, ledgers, and US currency. Often times members of drug trafficking organizations have to make stops at the stash locations to pick up illegal controlled substance to deliver. Additionally, drug traffickers will have customers meet drug traffickers near the stash location.  Multiple stops can be made in a day at these locations. This is done so the trafficker does not have to carry additional illegal controlled substances in their vehicle or person or maintain them at their residence. This protects the trafficker from law enforcement investigations as they do not have illegal controlled substances on them after the delivery is made or inside their personal residence. Often time the US currency will be transported after the delivery to the stash house to protect against law enforcement investigation and rival drug trafficker's robbery crews;

3

g.    I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

h.    I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry.  I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4.    I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

5.    The facts in this affidavit come my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; (c) court-authorized electronic communications; and (d) information obtained from cooperating citizen witnesses, confidential sources, and defendants, whose reliability is established herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4

6.     Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

7.     Based on the facts set forth in this affidavit, there is probable cause to believe that the crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections 841(a)(1), 846, and 843(b), have been committed by Rico L SMITH and other known and unknown individuals.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## JURISDICTION

8.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.     Since February 2023, the Drug Enforcement Administration (DEA), the United States Postal Inspection Service (USPIS), and the Wisconsin Department of Justice have been conducting an investigation involving Rico L SMITH (XX/XX/1990) and other known and unknown individuals, who are believed to be members of a Milwaukee-area based DTO engaged in the distribution of cocaine/fentanyl and believed to be sourced from California.

### A.     Background

5

9.     Since February 2023, law enforcement, including the Wisconsin Department of Justice have been conducting an investigation into Rico L. SMITH (XX/XX/1990), and other known and unknown individuals, who are believed to be members of a Milwaukee-area based drug trafficking organization (DTO) engaged in the distribution of cocaine/fentanyl.

10.     In January 2025, case agents interviewed confidential source (CS) regarding DTO in the Milwaukee area. CS positively identified a photo of Rico L. SMITH as a kilogram level fentanyl trafficker known to CS as Rico. CS admitted to obtaining drug trafficking phones from SMITH and selling a "couple of zip" of cocaine and 50-100 grams of fentanyl with SMITH on multiple occasions in the past. Based on training and experience, case agents know "zip" is slang used by drug traffickers to refer to ounces.  CS stated CS has known SMITH since 2014.  CS stated SMITH and CS has communicated in the past via telephone and Facetime.

10.     CS is credible and reliable because CS has provided intelligence concerning drug trafficking activities for known persons identified in this investigation and other investigations that have been independently corroborated through queries of law enforcement databases, law enforcement investigations and information gathered during this case. CS has also made statements against his/her own penal interests. CS has five felony convictions. CS has no arrests or convictions relating to dishonesty. CS is cooperating with law enforcement in exchange for consideration regarding felony drug trafficking offenses. CS is credible and reliable because CS has provided intelligence concerning drug trafficking activities for known persons identified in this investigation that have been independently corroborated through queries of law enforcement databases, law enforcement investigations and information gathered during this case. CS's information has led to the seizure of over ½ kilogram of fentanyl, over $200,000 U.S. Currency, multiple firearms, and two arrests.

11.     On April 8, 2025, CS notified law enforcement that SMITH meet with CS and was driving a white Chrysler minivan, bearing Illinois license plate 274276 (Chrysler). CS also indicated that in the past SMITH would use 7601 North 48th Street, Brown Deer, Wisconsin as a stash house to engaged in drug trafficking. CS also stated SMITH Facetime CS on April 8, 2025, from telephone number 414-308-4643. CS explained the SMITH showed CS suspected controlled substances during the Facetime call. CS made a recording (video no audio) of the Facetime communication between CS and SMITH. During the call, SMITH told CS that SMITH received a small amount of fentanyl from Chicago, but it was not good quality, and SMITH was supposed to receive additional fentanyl. Case agents obtained records that indicated the Chrysler minivan was a rental vehicle from Hertz and was rented by SMITH.

12.     On April 9, 2025, CS provided case agents with the recording. Case agents observed in the recording and noticed that the suspected controlled substances was a purple rock-like substance, consistent heroin/fentanyl (Figure 1). Case agents also observed SMITH's face on the recording.



(Figure 1)

7

13.     Also on April 9, 2025, case agents did physical surveillance at 7601 North 48th Street, Brown Deer, Wisconsin and observed a silver/gray Mini Cooper backup to the garage door of the address, but were not able to see the license plate.  Case agents reviewed Wisconsin Department of Transportation records and were aware the SMITH had a gray Mini Cooper, with Wisconsin license plate AZL3604.

14.     During the investigation, case agents determined a possible residence associated with SMITH of 936 South Green Bay Road, Mount Pleasant, Wisconsin.

15.     On April 14, 2025, case agents conducting physical surveillance 936 South Green Bay Road, Mount Pleasant, Wisconsin and observed a gray Ford Explorer, with no front plate and rear license plate later identified as Tennessee license plate 955BMSH (Explorer), back into the driveway of the residence. Case agents later obtained records which indicate the Explorer is a rental vehicle from Hertz and was rented by SMITH at the time.  Case agents observed SMITH exited the residence and entered into the Explorer and leave the area.

16.     On April 17, 2025, case agents conducting physical surveillance near 7601 North 48th Street, Brown Deer, Wisconsin observed SMITH driving the Explorer at North 43rd Street and Good Hope. Case agents observed that no one was in the passenger seat.  Case agents proceeded to the residence of 7601 North 48th Street, Brown Deer, Wisconsin approximately three minutes after observing SMITH operating the Explorer at the intersection.  Case agents observed the Explorer parked in the driveway of 7601 North 48th Street, Brown Deer, Wisconsin and appeared to have no occupants.

**SMITH Illegal Possession of Firearms**

17.     On July 31, 2025, case agents spoke with CS via telephone.  CS stated that CS had recently spoken with SMITH and SMITH informed CS that that SMITH was coordinating a

8

shipment of firearms to be delivered to Milwaukee. SMITH told CS that SMITH was getting a combination of AR's (rifles) and Glocks (pistols). CS did not believe SMITH intended to sell the firearms once they arrived in Milwaukee. SMITH told the CS that the firearms were for SMITH. The CS believed that SMITH was currently in a feud with the "Burleigh Zoo." Based on training and experience, case agents know that "Burleigh Zoo" is a known Milwaukee street gang locate on the north side that is known for gun violence.

18.     The CS was not sure of any specific person that was trying to harm SMITH, but the CS said that SMITH was getting the firearms because of this ongoing feud. CS stated that based on the information that SMITH had shared CS believed SMITH would be receiving the firearms within the next week. The CS believed based on the conversation with SMITH that SMITH would be receiving approximately 15 to 20 firearms and that it would be a combination of pistols and rifles.

19.     In late July 2025 or early August 2025, CS indicated the SMITH contacted CS using a new telephone number, 414-213-3972.

20.     On August 13, 2025, case agent received a phone call from CS. CS stated SMITH contact CS on telephone number 414-213-3972. CS stated SMITH was expecting the firearms to arrive shortly. CS understood SMITH to mean that it would be this same day at some point.

21.     Based on the investigation, case agents determined it was likely the firearms would be transported to SMITH's stash house located at 7601 North 48th Street, Brown Deer, Wisconsin.

22.     Case agents reviewed electronic surveillance in the area of 7601 North 48th Street, Brown Deer, Wisconsin and at approximately 12:59 pm observed a silver Ford SUV bearing Minnesota license plate RAV-918 (SUV) arrive and back into the driveway.

9

23. Case agents reviewed law enforcement databases which indicated that the SUV had been south of Indianapolis, Indiana at approximately 7:56 am this same morning.

24. After parking, case agents observed a black male exiting the driver's seat and a heavyset black female exit the passenger seat.

25. At approximately 2:01 pm a white Cadillac Escalade SUV (Escalade) (case agents were unable to view the license plate) arrived and park in the driveway of 7601 North 48th Street, Brown Deer, Wisconsin. The driver was positively identified as SMITH by case agents. Case agents also observed an unknown black male passenger exited the Escalade along with two small children. SMITH was observed in the driveway of the residence conversing with the driver of the SUV that had arrived earlier. All occupants of both vehicles were observed entering the garage door of the residence.

26. SMITH was observed exiting the garage door with the small children. The male passenger that arrived with SMITH entered the passenger side of the SUV, the same male driver that arrived in the SUV entered the driver's seat and both the SUV and Escalade departed the area at 2:33 pm.

27. Based on training and experience, the information provided by SMITH to CS, case agents believe the SUV transported firearms to SMITH to the residence of 7601 North 48th Street, Brown Deer, Wisconsin. Case agents believe SMITH meet with the firearms transports at the residence and has placed the firearms inside the residence.

28. SMITH has prior felon convictions for First Degree Reckless Injury, a Class D Felony, in Milwaukee County Case Number 2007CF1467 and Use of Communication Facility to Facilitate Controlled Substance Distribution, in Eastern District of Wisconsin Case 2020CR41.

10

29.     Case agents obtained a state search warrant for 7601 North 48th Street, Brown Deer, Wisconsin which was executed on August 14, 2025.  Inside the residence, case agents located items consistent with drug house including numerous kilo size wrappers (Figure 2).  Some had purple residue, which tested positive for fentanyl (Figure 3).  Case agents also located Pyrex glass with residue that tested positive for cocaine (Figure 4).   Case agents also located a loaded Smith and Wesson (Figure 5).



(Figure 2)



(Figure 3)



(Figure 4)



(Figure 5)

11

30.    One occupant was located inside the residence at the time of the search, Latoya WEBSTER.    WEBSTER provided verbal and written consent for case agents to access WEBSTER's cellular telephone in the presence of case agents.    Case agents located a total of eight different telephone numbers that had the contact name of "Rico" or "Rico (New)."    Case agents also observed a contact saved as "Rico (Kim)" that had an associated telephone number of 414-334-7668.    Case agents are familiar that this is Kimberly NEAL's telephone number and NEAL is SMITH's girlfriend.

31.    On August 16, 2025, SMITH using telephone number 414-213-3972 called CS and discussed the search of 7601 North 48th Street, Brown Deer, Wisconsin.    SMITH told the CS that law enforcement had conducted a search warrant at 7601 North 48th Street, Brown Deer, Wisconsin.    SMITH also told the CS that the search was related to firearms.    SMITH told the CS that law enforcement had seized SMITH's "baby mamas" gun from the residence but did not mention any other items.    SMITH also told the CS during this call that SMITH would be keeping SMITH's phone powered off for a while and SMITH also told the CS that he would reach out to the CS once he had a new telephone number.    As of August 20, 2025, the CS has not heard from SMITH.

**SMITH's Use of Telephone Number 414-424-0451 (Target Cell Phone).**

11.    In August of 2025, case agents spoke with a CS2 with knowledge of Rico SMITH.

12.    CS2 is credible and reliable because CS2 has provided intelligence concerning drug trafficking activities for known persons identified in this investigation and other investigations that have been independently corroborated through queries of law enforcement databases, law enforcement investigations and information gathered during this case. CS2 has also made statements against his/her own penal interests. CS2 has no felony convictions. CS2 has no arrests

12

or convictions relating to dishonesty. CS2 is cooperating with law enforcement in exchange for third party consideration regarding a felony drug trafficking offenses.

13. On August 18, 2025, CS2 indicated the SMITH contacted CS2 using a new telephone number, **414-424-0451** (**Target Cell Phone**). CS2 provided case agents with a screen shot of the text message exchange between CS2 and SMITH. The first message to CS2 from telephone number **414-424-0451** (**Target Cell Phone**) said, "New number," to which CS2 said, "Who is this." SMITH responded with, "Me", "Come meet me down the street from ur house," "51 Howard." CS2 knows this to be SMITH operating telephone number **414-424-0451** (**Target Cell Phone**) the area of South 51st Street and West Howard Avenue is a common spot for CS2 and SMITH to meet. CS2 has stated that SMITH routinely contacts CS2 from different telephone number, but the location of South 51st Street and West Howard Avenue remains a common meeting location.

14. Case agent reviewed law enforcement database, which indicated telephone number **414-424-0451** (**Target Cell Phone**) service provider is Dish Wireless LLC ("Service Provider") a wireless telephone service provider headquartered at 9601 Meridian Blvd, Englewood, CO 80112. Case agents are also aware that Dish Wireless services also attached to AT&T, headquartered at 1025 Lenox Park Blvd., Atlanta, GA 30319 and other cell phone servicing company currently servicing Dish Wireless at times.

## TECHNICAL BACKGROUND

15. Case agents believe the **Target Cell Phone** whose service provider is Dish Wireless LLC ("Service Provider") a wireless telephone service provider headquartered at 9601 Meridian Blvd, Englewood, CO 80112. Case agents are also aware that Dish Wireless services also attached to AT&T, headquartered at 1025 Lenox Park Blvd., Atlanta, GA 30319 and other cell phone

13

servicing company currently servicing Dish Wireless at times, continues to contain valuable information on this account that could be used as evidence for the possible crimes of possession of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections 841(a)(1), 846, and 843(b).

16.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on Service Provider's network or with such other reference points as may be reasonably available.

### A.     Cell-Site Data

17.     In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

14

18.     Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the **Target Cell Phone.** Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B.     E-911 Phase II / GPS Location Data**

19.     I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

20.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

15

21.     I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

22.     Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

23.     Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available.

### C.     Pen-Trap Data

24.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile

16

Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### D. Subscriber Information

25.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

### AUTHORIZATION REQUEST

26.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

27.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

17

28.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

29.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until July 22, 2026, consistent with the omnibus order signed buy Magistrate Judge Stephen C. Dries on July 22, 2025, after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

18

30.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2023R109**

1.     Records and information associated with the cellular device assigned telephone number **414-424-0451** (referred to herein and in Attachment B as **"Target Cell Phone"**, that is in the custody or control of Dish Wireless LLC ("Service Provider") a wireless telephone service provider headquartered at 9601 Meridian Blvd, Englewood, CO 80112.  Case agents are also aware that Dish Wireless services also attached to AT&T, headquartered at 1025 Lenox Park Blvd., Atlanta, GA 30319 and/or any other cell phone servicing company currently servicing Dish Wireless at times.

2.     The **Target Cell Phone**.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2023R109**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the time period from January 1,2025, to present:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

        viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

21

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cell Phone** or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the **Target Cell Phone** for a period of **30 days**, during all times of day and night. "Information about the location of the **Target Cell Phone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall

22

compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Rico SMITH (DOB XX/XX/1990) and other unidentified subject(s) since February 2023.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this warrant.

23